1   David Woolf, Esquire
2   California Bar No. 306958
3   Woolf Legal
4   14500 Roscoe Blvd. 4ᵗʰ Floor
5   Van Nuys, CA 91402
6   Telephone:   (323) 804-0730
7   Facsimile:    (310) 943-3542
8   david@woolflegal.com
9
10   Jason Turchin, Esquire
11   Florida Bar No. 585300
12   Law Offices of Jason Turchin
13   2883 Executive Park Drive, Suite 103
14   Weston, Florida 33331
15   Telephone:   (954) 515-5000
16   Facsimile:    (954) 659-1380
17   Jason@victimaid.com
18   *Pro Hac Vice Pending*

19
20                   UNITED STATES DISTRICT COURT
21                   CENTRAL DISTRICT OF CALIFORNIA
22
23
24
25   MICHAELA CLISSON,                           DOCKET NO.
26
27          Plaintiff,                           **COMPLAINT**
28   v.
29
       FCA US LLC F/K/A CHRYSLER
       GROUP LLC,

30          Defendants.
31   _____/
32
33          Plaintiff, MICHAELA CLISSON, (hereinafter "Plaintiff"), by and through

34   undersigned counsel, sues Defendant, FCA US LLC F/K/A CHRYSLER GROUP

35   LLC, and upon information and believe alleges as follows:

36

## General Allegations

1.      That this is an action in excess of $75,000.00 exclusive interest and costs, and within the jurisdiction of this Court.

2.      That at all material times to this Complaint, Plaintiff, MICHAELA CLISSON, was a citizen and resident of Salt Lake City, UT.

3.      That at all times material hereto, Defendant FCA US LLC F/K/A CHRYSLER GROUP LLC ("FCA") was and is a foreign limited liability company operating under the laws of the State of Delaware, with its principal place of business in Auburn Hills, Michigan. FCA is used herein to mean FCA US LLC and/or CHRYSLER GROUP LLC wherever referenced.

4.      Defendant FCA is subject to the jurisdiction of this Court because it operates, conducts, engages in, or carries on a business or business venture within this State; caused injury to persons or property arising out of an act or omission it committed in the State; manufactures, processes or services products or materials which are used within this State in the ordinary course of commerce, trade, or use; or engages in substantial and not isolated activity within this State.

5.      That this incident arose in Orange County, California and therefore venue lies in Orange County, California.

6.      This products liability action includes claims for general negligence, strict liability, fraudulent concealment, and breach of warranty.

1    7.    The claims asserted herein arise out of the design, selection, inspection,

2    testing, manufacture, assembly, equipping, marketing, distribution, and/or sale of an

3    uncrashworthy, defective, and unreasonably dangerous automobile and automobile

4    airbag system.

5    8.    That on or about May 27, 2019, Plaintiff was involved in an incident

6    while riding in a 2003 Jeep Grand Cherokee, VIN: 1J8GW68J43C531792.

7    9.    During the course of that incident, Plaintiff's occupant protection safety

8    system, including her driver's side airbag system, failed to perform in a reasonably

9    safe manner.

10    10.    Her vehicle, including its airbag system, was designed, selected,

11    inspected, tested, manufactured, assembled, equipped, marketed, distributed, and/or

12    sold by FCA.

13    11.    That airbag system, without any collision or provocation, spontaneously

14    and violently exploded and deployed with such excessive force (hereinafter referred to

15    as the "subject defect") that it caused serious bodily injury to Plaintiff.

16    12.    As a direct and proximate result of the spontaneous airbag deployment,

17    Plaintiff suffered severely painful and disfiguring fracture to the body, and resulting

18    pain and suffering, disability, mental anguish, embarrassment and humiliation, loss of

19    capacity for the enjoyment of life, and medical and nursing care and treatment. The

1  injuries are either permanent or continuing in nature, and Plaintiff will suffer the losses

2  and impairment in the future.

3                        **TOLLING OF THE STATUTE OF LIMITATIONS**

4                                    **Fraudulent Concealment**

5        13.    FCA was aware of and had actual knowledge of the subject defect but

6  concealed that defect from Plaintiff until at least May 27, 2019.

7        14.    Despite having knowledge of the subject defect, Defendant did not fully

8  investigate or disclose the seriousness of the issue and downplayed the widespread

9  prevalence and danger of the problem.

10       15.    Any applicable statute of limitation or repose has therefore been tolled by

11 Defendant's knowledge, active concealment, and denial of the facts alleged herein, and

12 of which behavior is continuing.

13       16.    The period of repose had not run prior to Plaintiff filing this action as the

14 period was tolled for the time during which FCA through its officers, directors,

15 partners, or managing agents had actual knowledge that the product as defective in the

16 manner alleged by the claimant and took affirmative steps to conceal the defect.

17       17.    Beginning well prior to the vehicle's date of sale, and continuing for

18 several years thereafter, FCA, through their officers, directors, partners, or managing

19 agents, had actual knowledge that the subject vehicle was defective in the manner

20 alleged in this Complaint, and took affirmative steps to conceal such defects.

18.     The specific acts of concealment, and the substantial factual and legal basis for Plaintiff's allegations of same, include but are not limited to the following events specified below, upon information and belief:

a.  FCA has had actual knowledge of the nature, scope, and risks posed by the unreasonably dangerous and defective airbags.

b.  The National Highway Traffic Safety Administration ("NHTSA") opened an investigation relating to complaints of the subject defect in 2002-2003 Jeep Grand Cherokee vehicles in October 2011. That investigation found that FCA failed to report multiple complaints of the same or similar defect as in Plaintiff's vehicle. That investigation led to the first recall due to the subject defect two years later, but FCA did not include the subject vehicle in that recall.

c.  Since at least 2011, FCA has had a growing and continuing awareness of the subject defect through consumer complaints, claims, and lawsuits, and of the grave safety dangers associated with inadvertent airbag deployments.

d.  FCA's decisions to conceal the subject defect were made by upper management, their legal departments, and their outside counsel and/or agents and were made in an effort to hide the subject defect from the public, including consumers, such as Plaintiff.

e.  On or about August 2012, the NHTSA investigation was upgraded (EA12-001) to include other vehicles that utilized the same application specific intergraded circuit as used in the 2002-2003 Jeep Grand Cherokee models.

f.  As of at least October 4, 2012, a NHTSA investigation revealed that FCA was aware of at least 126 inadvertent airbag deployments events that resulted in at least 59 injuries involving 2002-2003 Jeep Grand Cherokee vehicles, prior to the subject incident.

g.  Upon information and belief, the affected vehicles included Jeep Grand Cherokee models manufactured on January 9, 2001 through March 28, 2003.

h.  On October 30, 2012, FCA conducted a voluntary safety recall of some, but not all, of the affected vehicles and planned to begin notifying the public of the defect during January 2013.

i.  As required by the NHTSA, FCA was to notify affected owners of the defect within 60 days of a manufacturer's notification to NHTSA.

j.  FCA notified NHTSA of their voluntary recall on November 7, 2012, but did not notify all affected vehicle owners within 60 days.

k.  FCA further continued concealment of the extent of the subject defect.

l.  On or about January 7, 2013, FCA began notifying the affected owners through NHTSA Recall 12V-527.

m.  On January 7, 2013, in Recall 12V-527, FCA began a very limited recall for the subject defect. At that time, FCA stated that the defect was that "The Occupant Restraint Control (ORC) module installed in [the] vehicle has a small chance of experiencing an electrical overstress condition." The overstress condition, if left unresolved, could result in inadvertent deployment of the front airbags. This recall occurred years after the first inadvertent airbag deployment incident in a Chrysler car.

n.  FCA, however, concealed the magnitude of the defect, including that Plaintiff's vehicle had the subject defect, because Plaintiff's vehicle, despite suffering from the defect described in the preceding paragraph, was not included in Recall 12V-527.

o.  On or about February 17, 2014, FCA notified NHTSA that FCA completed the owner notification mailing on February 17, 2014 and that the exact number of vehicles involved in the recall was approximately 744,632 in the United States and 5,885 in the United States Territories.

1          p.  As of February 14, 2014, FCA, continued to conceal the magnitude of

2              the defect, including that Plaintiff's vehicle had the subject defect,

3              because Plaintiff's vehicle, despite suffering from the subject defect,

4              was still not recalled at that time.

5          q.  On or about May 29, 2014, NHTSA opened a recall inquiry to

6              investigate the effectiveness of the remedy of the previous FCA recall

7              pertaining to the subject defect.

8          r.  NHTSA found that several additional reports of inadvertent airbag

9              deployments were reported following the previous 2014 recall, which

10           still did not include Plaintiff's vehicle.

11         s.  On or about January 27, 2015, FCA issued a recall (15V-046), which

12           was to include Plaintiff's vehicle.

13         t.  Plaintiff never received this notice.

14         u.  The copy of the notice posted on FCA's website which was

15           supposedly sent to Plaintiff does not list any name or address

16           identifying who FCA sent the recall notice to, nor the accurate VIN

17           number of Plaintiff's vehicle.

18         v.  On or about November 13, 2015, NHTSA found that FCA finally

19           addressed its concerns that FCA's prior recalls were inadequate to

1              sufficiently address the safety issues identified by the investigation,

2              and closed its investigation.

3    19.    At all relevant times, Plaintiff's vehicle was identified as an affected

4    vehicle with a faulty ORC module and hence one that could suffer from inadvertent

5    airbag deployment and yet she never received a recall notice.

6    20.    The recall on Plaintiff's vehicle recites the language in the previous

7    recalls having the same subject defect for the same vehicles.

8    21.    Plaintiff did not become aware of any such recall or defect until sometime

9    after the subject incident.

10   22.    FCA willfully and knowingly withheld information from the public and

11   failed to put vehicle owners, such as Plaintiff, on notice of a catastrophic defect to the

12   2002-2003 Jeep Grand Cherokee vehicles, when it could have easily located these

13   owners through a simple background check and/or vehicle search through the state of

14   Florida.

15   23.    Defendant had actual knowledge of the catastrophic defect, but

16   intentionally chose to conceal it from vehicle owners, such as Plaintiff, despite the high

17   probability that injury or damage to the Plaintiff would result and, despite that

18   knowledge, intentionally concealed the defect, which ultimately resulted in injury

19   and/or damage to Plaintiff.  Alternatively, Defendant's conduct was so reckless or

1    wanting in care that it constituted a conscious disregard or indifference to the life,

2    safety, or rights of persons exposed to such conduct, including Plaintiff.

3                                        **Estoppel**

4        24.    FCA was and are under a continuous duty to disclose to Plaintiff the true

5    character, quality and nature of the vehicle.

6        25.    FCA actively concealed the true character, quality and nature of the

7    subject vehicle, and knowingly made misrepresentations about the quality, safety,

8    reliability, characteristics and performance of the subject vehicle.

9        26.    Plaintiff reasonably relied on FCA's knowledge and affirmative

10   misrepresentations and/or active concealment of these facts to her detriment.

11       27.    FCA therefore are estopped from relying on any statute of limitations or

12   statute of repose in defense of this action.

13                                    **Discovery Rule**

14       28.    The causes of action herein did not accrue until Plaintiff discovered that

15   her vehicle had a defective airbag.

16       29.    Plaintiff had no realistic ability to discern that her airbag was defective

17   until, at the earliest, the defective airbag exploded.

18       30.    Even then, Plaintiff had no reason to know the explosion was caused by

19   a defect in the airbag because FCA actively concealed the true nature and extent of the

1  defect and even after FCA recalled the subject vehicle, Plaintiff never received the

2  recall notice.

3  <u>**CONDITIONS PRECEDENT**</u>

4  31.   All conditions precedent to the bringing of this action have been met or

5  waived.

6  <u>**COUNT I**</u>
7  **(NEGLIGENCE)**

8  32.   Plaintiff re-alleges and incorporates the allegations contained in

9  paragraphs 1 - 31 above.

10  33.   Defendant FCA owed a duty of reasonable care in the design,

11  development, testing, manufacture, assembly, marketing, and distribution of the

12  subject vehicle and its safety systems so as to avoid exposing Plaintiff to unnecessary

13  and unreasonable risks.

14  34.   Defendant FCA breached that duty in one or more of the following ways:

15          a. By negligently failing to use due care in the manufacture, distribution,

16              design, sale, testing, and servicing of the subject vehicle and its

17              component parts in order to avoid the aforementioned risks to

18              individuals;

19          b. By negligently failing to provide adequate warnings against

20              inadvertent airbag deployment and/or its propensity to cause and/or

21              contribute to injuries;

1        c.  By negligently failing to incorporate within the subject vehicle and its

2            design reasonable safeguards and protections against inadvertent

3            airbag deployment and the consequences thereof;

4        d.  By negligently failing to make timely correction to the design of the

5            subject vehicle to correct the airbag defects, including the failure to

6            install the sensors in the proper locations;

7        e.  By negligently failing to adequately identify and mitigate the hazards

8            associated with inadvertent airbag deployment and/or inadequate

9            locations of sensors in accordance with good engineering practices;

10       f.  By negligently failing to provide adequate warnings inadvertent

11           airbag deployment;

12       g.  By negligently failing to adequately identify and mitigate the hazards

13           associated with inadvertent airbag deployment in accordance with

14           good engineering practices;

15       h.  By negligently failing to adequately test the subject vehicle to ensure

16           it provided foreseeable occupants with reasonable safety in

17           foreseeable impacts;

18       i.  By negligently designing the vehicle from an occupant

19           protection/crashworthiness standpoint;

1    j. By failing to adequately warn foreseeable users of the unreasonably

2     dangerous and defective condition(s) of the vehicle despite that FCA

3     knew or should have known the unreasonably dangerous condition(s);

4    k. By failing to disclose known problems and defects;

5    l. By marketing the vehicle as a safe passenger vehicle and reasonably

6     safe in a crash;

7    m. By negligently designing the vehicle and/or its parts from a marketing

8     standpoint in that the vehicle and/or its parts were marketed as

9     reasonably safe for the uses for which FCA represented it publicly;

10    n. By failing to meet or exceed internal corporate guidelines;

11    o. By failing to meet or reasonably exceed minimum Federal Motor

12     Vehicle Safety Standards despite knowledge of the inadequacy of

13     such standards;

14    p. By failing to timely notify consumers, as required by law, that a defect

15     exists or otherwise existed in the vehicle that relates to public safety;

16    q. By failing to timely recall the vehicle or alternatively retrofitting the

17     vehicle to enhance safety;

18    r. By failing to provide adequate warning and/or instructions to

19     foreseeable users of the unreasonable, dangerous and defective

1                       condition of the vehicle despite that they knew or should have known

2                       of the unreasonably dangerous conditions; and

3               s.   By failing to inform consumers, including Plaintiff, that FCA knew

4                       about the airbags and occupant protection risks in the subject vehicle,

5                       thus depriving consumers, including Plaintiff, of the right to make a

6                       conscious or free choice in light of the known risks of operating the

7                       subject vehicle.

8     35.   As a direct and proximate result of the aforementioned negligence of

9    Defendant FCA, Plaintiff suffered permanent, catastrophic bodily injuries, and

10   resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity

11   for the enjoyment of life, the expense of hospitalization, medical and nursing care and

12   treatment, loss of earnings, loss of ability to earn money, and aggravation of a

13   previously existing condition, if any. The losses are either permanent or continuing and

14   Plaintiff will suffer the losses in the future.

15     **WHEREFORE**, Plaintiff, MICHAELA CLISSON, demands judgment against

16   Defendant, FCA, for compensatory damages in excess of the jurisdictional limits of

17   this Court, together with interest, economic damages, punitive damages, and for such

18   other relief as this Honorable Court may deem just and proper.

19                                **<u>COUNT II</u>**
20                              **(STRICT LIABILITY)**

1      36.    Plaintiff re-alleges and incorporates the allegations contained in

2    paragraphs 1 - 31 above.

3      37.    At all material times, FCA designed, developed, manufactured, marketed,

4    assembled, tested, distributed, sold and/or placed into the stream of commerce the

5    subject vehicle and its safety systems.

6      38.    At all material times, FCA designed, developed, manufactured, marketed,

7    assembled, tested, distributed, and/or sold the defective airbag safety system

8    incorporated into FCA vehicles as a component part.

9      39.    At all material times, the subject vehicle was unreasonably dangerous and

10    defective, upon information and belief, because:

11         a.  Defendant FCA failed to use due care in the manufacture,

12              distribution, design, sale, testing, and servicing of the subject vehicle

13              and its component parts in order to avoid the aforementioned risks to

14              an individual;

15         b.  Defendant FCA failed to provide adequate warnings against

16              inadvertent airbag deployment and/or its propensity to cause and/or

17              contribute to injuries;

18         c.  Defendant FCA failed to incorporate within the subject vehicle and its

19              design reasonable safeguards and protections against inadvertent

20              airbag deployment and the consequences thereof;

1         d.   Defendant FCA failed to make timely correction to the design of the subject vehicle to correct the airbag defects, including the failure to install the sensors in the proper locations;

4         e.   Defendant FCA failed to adequately identify and mitigate the hazards associated with inadvertent airbag deployment and/or inadequate locations of sensors in accordance with good engineering practices;

7         f.   Defendant FCA failed to adequately test the subject vehicle to ensure it provided foreseeable occupants with reasonable safety in foreseeable impacts;

10        g.   By failing to adequately design the vehicle from an occupant protection/crashworthiness standpoint;

12        h.   By failing to adequately warn foreseeable users of the unreasonably dangerous and defective condition(s) of the vehicle despite that Defendant FCA knew or should have known the unreasonably dangerous condition(s);

16        i.   By failing to timely disclose known problems and defects;

17        j.   By marketing the vehicle as a safe passenger vehicle and reasonably safe in a crash;

1        k.  By designing the vehicle from a marketing standpoint in that the

2            vehicle was marketed as reasonably safe for the uses for which

3            Defendant FCA represented it publicly;

4        l.  By failing to meet or exceed internal corporate guidelines;

5        m.  By failing to meet or reasonably exceed minimum Federal Motor

6            Vehicle Safety Standards despite knowledge of the inadequacy of

7            such standards;

8        n.  By failing to notify consumers, as required by law, that a defect exists

9            and/or otherwise existed in the vehicle that relates to public safety;

10       o.  By failing to recall the vehicle or alternatively retrofitting the vehicle

11           to enhance safety;

12       p.  By failing to provide adequate warning and/or instructions to

13           foreseeable users of the unreasonable, dangerous and defective

14           condition of the vehicle despite that it knew or should have known the

15           unreasonably dangerous conditions; and

16       q.  By failing to inform consumers, including Plaintiff, that FCA knew

17           about the airbags and occupant protection risks in the subject vehicle,

18           thus depriving Plaintiff of the right to make a conscious or free choice

19           in light of the known risks of operating the subject vehicle.

40.     These unreasonably dangerous defects were present in the vehicle when it was placed into the stream of commerce by Defendant FCA and the vehicle did not undergo material change or alteration up to and including the time of the aforementioned crash.

41.     As a direct and proximate result of the aforementioned defects of Defendant FCA, Plaintiff suffered permanent, catastrophic bodily injuries, and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, the expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition, if any. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

**WHEREFORE**, Plaintiff, MICHAELA CLISSON, demands judgment Defendant, FCA, for compensatory damages in excess of the jurisdictional limits of this Court, together with interest, economic damages, punitive damages, and for such other relief as this Honorable Court may deem just and proper.

## COUNT III
### (FRAUDULENT CONCEALMENT)

42.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 - 31 above.

43.     Defendant FCA, through its employees, agents, and/or servants, who were acting within the course and scope of their employment, made false statements, misrepresentations of material fact, and/or concealed and/or suppressed the truth of the cause, magnitude, and gravity of the subject defect as stated with specificity above.

44.     At the time the acts were made by Defendant FCA, through its employees, agents, and/or servants, while acting within the course and scope of their employment, those individuals knowingly made the misrepresentations and/or concealed and/or suppressed the truth.

45.     At the time the acts were made by Defendant FCA, through its employees, agents, and/or servants, while acting within the course and scope of their employment, those individuals should have known that its misrepresentations were false and/or concealed and/or suppressed the truth.

46.     Defendant FCA intended that individuals, such as Plaintiff, would be induced by their false statements, misrepresentations of material fact, and/or concealment and/or suppression the truth of the cause, magnitude, and gravity of the subject defect as follows:

  a.  To induce individuals, including Plaintiff, to continue to operate their motor vehicles under the false belief that their motor vehicles were safe and did not suffer from the subject defect; and/or

  b.  To induce individuals, including Plaintiff, to not seek repair and/or replacement parts for the subject defect in their motor vehicles at the expense of Defendant FCA.

47.   Plaintiff was induced by Defendant FCA and justifiably relied upon their misrepresentations in that she continued to operate her motor vehicle believing it was safe and did not suffer from the subject defect.

48.   Had Plaintiff known that the subject vehicle was not safe and/or suffered from the subject defect, she would not have operated that vehicle and/or would have sought its repair and/or replacement.

49.   Relying on Defendant FCA's false statements and/or material omissions, Plaintiff continued to operate the subject vehicle and suffered serious bodily injury as a result.

50.   As a direct and proximate result of the aforementioned fraud of Defendant FCA, Plaintiff suffered permanent, catastrophic bodily injuries, and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, the expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a

1   previously existing condition, if any. The losses are either permanent or continuing and

2   Plaintiff will suffer the losses in the future.

3      **WHEREFORE**, Plaintiff, MICHAELA CLISSON, demands judgment against

4   Defendant, FCA, for compensatory damages in excess of the jurisdictional limits of

5   this Court, together with interest, economic damages, punitive damages, and for such

6   other relief as this Honorable Court may deem just and proper.

7                                   <u>**COUNT IV**</u>
8                  **(BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY)**
9

10     51.    Plaintiff re-alleges and incorporates the allegations contained in

11   paragraphs 1 - 31 above.

12     52.    Defendant FCA designed, marketed, manufactured, distributed and/or

13   sold the vehicle within which Plaintiff was traveling at the time of the subject

14   incident.

15     53.    The subject vehicle was equipped with an airbag system.

16     54.    Said airbag system malfunctioned, thereafter causing Plaintiff to

17   sustain injuries.

18     55.    Defendant FCA negligently designed, manufactured, assembled, tested,

19   marketed, distributed, and/or sold said airbag system in an inherently and

20   unreasonably defective and dangerous condition, and said condition existed from the

21   time of manufacture until the date of the subject accident.

1     56.     Defendant FCA had actual knowledge of the dangerous condition; or if

2    Defendant FCA lacked such actual knowledge, this dangerous condition existed for

3    such a length of time that, in the exercise of ordinary care, Defendant FCA should have

4    known of the condition.

5     57.     This condition was not readily apparent to someone who could get

6    injured, such as Plaintiff.

7     58.     Further, Defendant FCA failed to warn Plaintiff of the dangerous and/or

8    otherwise defective airbag.

9     59.     Defendant FCA is part of the distributive chain of the dangerous and/or

10    otherwise defective airbag which injured Plaintiff.

11     60.     At all times material hereto, there existed an implied warranty that the

12    airbag shall be merchantable.

13     61.     Defendant FCA breached said warranty by its negligent design,

14    manufacture, assembly, distribution, and/or sale of said airbag in an inherently and

15    unreasonably defective and dangerous condition.

16     62.     As a result of Defendant FCA's breach of the implied warranty of

17    merchantability, Plaintiff, MICHAELA CLISSON, was injured in and about her body

18    and extremities, suffered pain therefrom, incurred medical expenses in the treatment

19    of her injuries, suffered physical handicap, and her working ability was impaired; the

1  injuries are either permanent or continuing in nature and Plaintiff will suffer the losses

2  and impairment in the future.

3      **WHEREFORE,** Plaintiff, MICHAELA CLISSON, demands judgment

4  against Defendant, FCA, for compensatory damages in excess of the jurisdictional

5  limits of this Court, together with interest, economic damages, punitive damages, and

6  for such other relief as this Honorable Court may deem just and proper.

7                                                                 **COUNT V**

8  **(BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR**

9                                           **PURPOSE)**

11     63.   Plaintiff re-alleges and incorporates the allegations contained in

12  paragraphs 1 - 31 above.

13     64.   Defendant FCA designed, marketed, manufactured, distributed and/or

14  sold the vehicle within which Plaintiff was traveling at the time of the subject

15  incident.

16     65.   The subject vehicle was equipped with an airbag system.

17     66.   Said airbag system malfunctioned, thereafter causing Plaintiff to

18  sustain injuries.

19     67.   Defendant FCA negligently designed, manufactured, assembled,

20  distributed, tested, marketed, and/or sold said airbag system in an inherently and

21  unreasonably defective and dangerous condition, and said condition existed from the

22  time of manufacture until the date of the subject accident.

68.     Defendant FCA had actual knowledge of the dangerous condition; or if Defendant FCA lacked such actual knowledge, this dangerous condition existed for such a length of time that, in the exercise of ordinary care, Defendant FCA should have known of the condition.

69.     This condition was not readily apparent to someone who could get injured, such as Plaintiff.

70.     Further, Defendant FCA failed to warn Plaintiff of the dangerous and/or otherwise defective airbag.

71.     Defendant FCA is part of the distributive chain of the dangerous and/or otherwise defective airbag which injured Plaintiff.

72.     Defendant FCA, at the time of the airbag design, manufacture, assembly, distribution, testing, marketing, and/or sale, knew of the particular purpose for which the airbag was going to be used; specifically, to deploy and protect a person in the event of in an automobile accident and not to spontaneously deploy without an accident.

73.     Defendant FCA impliedly warranted its products were merchantable and breached that warranty as provided herein.

74.     Plaintiff relied upon Defendant FCA's skill and judgment when purchasing her vehicle containing said airbag.

1      75.    As a result of Defendant FCA's breach of the implied warranty of fitness

2    for a particular purpose, Plaintiff, MICHAELA CLISSON, was injured in and about

3    her body and extremities, suffered pain therefrom, incurred medical expenses in the

4    treatment of her injuries, suffered physical handicap, and her working ability was

5    impaired; the injuries are either permanent or continuing in nature and Plaintiff will

6    suffer the losses and impairment in the future.

7    **WHEREFORE,** Plaintiff, MICHAELA CLISSON, demands judgment

8    against Defendant, FCA, for compensatory damages in excess of the jurisdictional

9    limits of this Court, together with interest, economic damages, punitive damages, and

10    for such other relief as this Honorable Court may deem just and proper.

11

1                               **<u>DEMAND FOR TRIAL BY JURY</u>**

2              Plaintiff demands a jury trial for all issues so triable.

3   Signed on May 13, 2021.

4                                 **WOOLF LEGAL**

5                                 Attorney for Plaintiff

6                                 14500 Roscoe Blvd. 4th Floor

7                                 Van Nuys, CA 91402

8                                 Telephone:   (323) 804-0730

9                                 Facsimile:    (310) 943-3542

10

11                        By:   <u>/s/ David Woolf, Esq.</u>

12                                 DAVID WOOLF, ESQUIRE

13                                 California Bar No. 306958

14

15

16                               **LAW OFFICES OF JASON TURCHIN**

17                                 Attorney for Plaintiff

18                                 2883 Executive Park Drive

19                                 Suite 103

20                                 Weston, Florida 33331

21                                 Telephone:   (954) 515-5000

22                                 Facsimile:    (954) 659-1380

23

24                        By:   <u>/s/ Jason Turchin, Esq.</u>

25                                 JASON TURCHIN, ESQUIRE

26                                 Florida Bar No. 585300

27                                 *Pro Hac Vice Pending*

28

29